*W. H. Smith* for respondents.

---

## VICTORINO M. PIRES *v.* KALA KANAHUNA.

### No. 1382.

EXCEPTIONS FROM CIRCUIT COURT SECOND CIRCUIT. HON. L. L. BURR, JUDGE.

ARGUED MAY 15, 1922.                    DECIDED MAY 22, 1922.

PETERS, C. J., EDINGS AND PERRY, JJ.

EXPERT AND OPINION EVIDENCE—*opinions of experts generally.*

Persons having technical and peculiar knowledge on certain subjects are allowed to give their opinions when the question

involved is such that the jurors are incompetent to draw their own conclusions from the facts without the aid of such evidence.

SAME—*opinions of surveyors.*

> The opinions of surveyors are admissible as regards the location of a particular survey.

TRESPASS—*evidence of true boundaries.*

> In an action of trespass for the destruction of a fence erected by plaintiff on a line alleged to have been agreed upon and acquiesced in by both parties as the boundary, the defendant, having in his answer and in his testimony denied the alleged agreement and acquiescence and claimed that the fence was on his, the defendant's, land, may adduce evidence of the location of the true boundary.

OPINION OF THE COURT BY PERRY, J.

This was an action of trespass concerning a small piece of land situate at Pulehuiki, Kula, Island of Maui. The allegations of the plaintiff's declaration are as follows: (1) that the plaintiff is the owner of the land situated at Pulehuiki described by metes and bounds in R. P. No. 3889; (2) that the defendant is the owner of the land situated at Pulehuiki described by metes and bounds in R. P. 3900 to D. Kane; (3) that these two pieces of land adjoin each other; (4) that in the year 1916, one Foss, a duly qualified surveyor, at the request of the defendant, surveyed the boundary line between the two pieces of land and placed permanent marks fixing the boundary and that thereafter the plaintiff's predecessor in title and the defendant agreed upon and recognized the line as so marked as the boundary line; (5) that in May, 1921, the plaintiff erected a fence along the boundary line as surveyed and marked by Foss; (6) that shortly thereafter and in the month of May, 1921, the defendant unlawfully demolished the fence so erected by the plaintiff, leaving plaintiff's fields open and exposed; and (7) that by reason of the defendant's acts the plaintiff has been damaged in the sum of $500. The prayer is for damages in the sum of $500 together with costs.

The defendant in his answer denied that he made the agreement alleged by the declaration, asserted that he had not at any time recognized the line surveyed and marked by Foss as being the boundary and alleged, (1) that Foss began but did not complete a survey of the boundary in question; (2) that the defendant thereafter employed· one A. P. Low, a duly qualified surveyor, to make a survey of the boundary, that Low did so and that the line as marked by Low on the ground is the true boundary between the two lands; and (3) that therefore the defendant's acts in demolishing the fence were merely in assertion and protection of his rights and were lawful.

Upon the issues as thus framed the parties went to trial before a jury and the verdict was for the defendant. The case comes to this court on three exceptions which will be here dealt with in their order.

The first exception is thus stated in the bill: "That after the plaintiff had rested his case the defendant called as a witness one A. P. Low, a surveyor, and on direct examination defendant put the following interrogatory to said witness: 'Will you tell the jury if. Grant 3900 to D. Kane is the property alleged in the complaint as belonging to the defendant:—tell the jury what you did to locate those boundaries'. To which interrogatory the plaintiff objected on the ground that it was irrelevant, incompetent and immaterial, which objection the court overruled and the plaintiff noted an exception. (Transcript pp. 38, 39.)" The witness did not answer the first part of the question as put. It is obvious from a reading of the complaint that Grant 3900 to D. Kane is there alleged to belong to the defendant. This part of the question would seem to have been meaningless. In any event what the witness did in answer to the question was simply to relate to the jury what he did upon the ground by way of locating the boundary between the two lands in ques-

tion. Surveyors are experts in their particular line of business and their opinions are sometimes admissible upon certain questions, as for example, those relating to the identity of monuments found upon the ground. In so far, however, as this particular exception is concerned, we do not find from the record that the witness' answers can be regarded as other than statements of matters of fact within the knowledge of the witness and such evidence it is always competent for a surveyor to give.

The second exception was to the giving of what are claimed to be "conclusions" of the surveyor "concerning the boundary line," reference being made in the statement of this exception to page 41 of the transcript. The witness having stated what he did on the ground by way of locating the boundaries named in R. P. 3900, said (Transcript p. 41): "My conclusion, therefore, of this survey was that the true boundary line is along these black lines: — zero, 1, 2, 3, 4, 5, 6, 7, 8; then to 9; then from the black 9 it should go over about 8 feet; then to red 10, red 11, and back to zero." This is the evidence objected to. This testimony was in reality a statement of the opinion of the surveyor as to the actual location of these lines upon the ground in view of the geographical conditions and monuments as he found them and of any discrepancies between different calls of the description and of the failure of the survey to close. There was no evidence of the existence of any description or any patent or deed other than R. P. 3900 and the witness was not asked to give and did not attempt to give an opinion as to the relative merits of any two or more descriptions or to choose between two or more conflicting statements of the boundary. He simply ran on the ground the one description which alone was before the jury and gave his opinion as to the true location on the ground of the lines in that description. In our judgment this opinion of the sur-

veyor was admissible. By reason of his particular train-
ing and experience he was peculiarly fitted to aid the
jurors in the performance of their duties by giving to
them his views based upon his study of the natural con-
ditions on the ground. It is well established that such
opinions are admissible although not conclusive on the
jury. It is conceivable that other surveyors equally
expert and reliable might have been produced by the
plaintiff and given testimony in conflict with that given
by Low. It would then have been the province of the
jury to weigh the conflicting opinions of these surveyors,
together with the remainder of their testimony as to the
monuments and other natural conditions, and in the light
of all of the evidence to render a verdict. "The general
rule as to the admissibility of expert evidence is that per-
sons having technical and peculiar knowledge on certain
subjects are allowed to give their opinions when the ques-
tion involved is such that the jurors are incompetent to
draw their own conclusions from the facts without the aid
of such evidence." 12 A. & E. Enc. L. 422. "The opin-
ions of surveyors are admissible as regards the location
of a particular survey. * * * Opinions of surveyors are
admissible as to whether stone-piles, trees and other
objects were intended as monuments of boundaries."
Ib. 455. To the same effect are 5 Cyc. 967, 968; 9 C. J.
287, 288; and *Virginia Coal & Iron Co.* v. *Isonn,* 75 S. E.
(Va.) 782, 785. See also 4 R. C. L. 118; and *Morrison*
v. *Holder,* 101 N. E. (Mass.) 1067, 1069.

The third exception is to the verdict "as being contrary
to the law, the evidence and the weight of the evidence."
It may be that this exception was abandoned. In any
event there was ample evidence before the jury to sustain
a finding that there was no agreement or recognition of
the Foss line as the true boundary and the only inference

from the verdict is that the jury found that there was no such agreement or recognition.

While technically perhaps the question is not raised by the exceptions, it may be added that Low's testimony of his employment by defendant and concerning his location of the boundary as stated in R. P. 3900 was admissible in support of the claims made in the defendant's answer. Those claims were not only that the agreement and recognition relied upon by the plaintiff did not exist but also that the fence which was demolished by the defendant had been erected by the plaintiff upon land belonging to the defendant. Low's testimony tended to support both of these claims of the defendant. It was not obligatory upon the defendant to confine himself to a bare denial of the making of the agreement relied upon by the plaintiff. He might properly, as he did, proceed to narrate the whole history of the surveys made by Howell, Foss and Low as tending to rebut the plaintiff's theory of the case and to emphasize the correctness of his own statement that he did not enter into any such agreement.

Whether the plaintiff's declaration states a cause of action is a question not raised by the pleadings or the argument. Under the circumstances of the case it is immaterial at this stage whether a cause of action is or is not stated and we therefore give the point no consideration.

The exceptions are overruled.

*Enos Vincent* for plaintiff.

*E. R. Bevins* for defendant.